HOWARD O'CONNOR,

*vs.*

SEABOARD COMMERCIAL CORPORATION, a corporation of the State of Delaware.

*New Castle, June 29, 1951.*

*Arthur G. Logan,* of Logan, Marvel & Boggs, and *Stephen E. Hamilton, Jr.,* Wilmington, for plaintiff.

*C. S. Layton,* of Richards, Layton & Finger, Wilmington and *Charles Tuttle,* of Breed, Abbott & Morgan, of New York City, for defendant.

SEITZ, Chancellor: This is the decision on a rule to show cause why a preliminary injunction should not issue restraining the defendant corporation from carrying out the following proposals:

1. A proposal to settle all claims which the corpora-

tion and all .certified public accountants employed by the corporation or their subsidiaries prior to August 1, 1948 may have against each other and their releasing each other from any and all further liability.

2. A proposal to settle all claims which the corporation may have against any of its former officers and directors and releasing said former officers and directors from any and all further liability.

Defendant corporation is admittedly insolvent in both the equity and bankruptcy senses. It has been liquidating its assets and settling with its creditors. Defendant's principal asset is a lawsuit in New York against its former certified public accountants in the sum of $6,797,373.15. The lawsuit is predicated on the negligent manner in which this accounting firm performed its work with resultant heavy financial losses to the defendant corporation.

The corporation has another asset in the form of causes of action and possible causes of action against its former officers and directors for breach of duty. The parties to the present action are in serious disagreement as to the practical value of these assets.

In one of the affidavits filed by the defendant, it is stated as follows:

"* * * , the liquidation of Seaboard's assets will, *at best*, fall some $2,000,000 short of providing sufficient funds to pay Seaboard's creditors in full. At the worst the deficit may approximate $3,000,000. Even if, by any stretch of the imagination, the pending litigation when prosecuted to completion resulted in securing *collectible* judgments of this amount, Seaboard's creditors would assert a prior claim over Seaboard's stockholders to *all* proceeds collected by the corporation."

However, according to another of defendant's affidavits, the creditors' claims at most amount to only about $3,000,000. While it is not too clear, it appears that there can be added to these claims, a government tax claim and other possible obligations aggregating upwards of $650,000.

It should be pointed out however that a substantial part of these latter claims is highly contingent. As has already been noted, these obligations may be contrasted with claims in excess of $7,000,000. The claim against the accountants is of real substance because of the New York law and the fact that the accounting firm saw fit to settle suits against it by certain of the defendant's creditors for $750,000.

The corporation is settling these claims for a sum ($1 per share) which, realistically, would mean practically nothing to the stockholders. The original par value of the preferred and common stock was $10 per share. The corporation says that if this settlement falls, the stockholders will get nothing because the creditors will take everything that could possibly be realized and it is only through the consent of the creditors that the $1 per share payments can be made.

What are the terms of this settlement? The claim against the former accountants for about $6,800,000 will be settled in this manner:

"* * * the former accountants will pay to Joseph Manganero, as escrow agent with respect to the corporation's stockholders, and to Leslie Roberts, as escrow agent with respect to Long Island Bankers, Inc.'s stockholders, an amount sufficient to pay the sum of $1 per share to every stockholder of record of these two corporations, exclusive of named stockholders constituting the former officers and directors, and their immediate families. In addition, the accountants will pay to Mr. Manganero the sum of $8,100, and to Mr. Roberts the sum of $6,500, to cover all the costs of their time and their expenses with respect to their services as escrow agents and in connection with the extended negotiations leading up to the proposed settlement."

The actions against the former officers and directors for about $400,000, and for about $6,000,000 (duplicating suit against accountants) will be settled in the following manner:

"* * * the former officers and directors pay to the corporation $57,500 in cash and $17,500 in three-year 4% notes of certain individual

defendants. In addition, the defendants, for themselves and members of their immediate families, will have no participation as stockholders in the proposed arrangements with the corporation's former accountant, hereinafter described." [The $75,000 will go to defendant's creditors.]

The complete release of the former accountants is worthy of careful scrutiny when we consider that the accountants are, by the proposed plan, attempting to obtain what amounts to a complete release of liability by the purchase of the stock for $1 per share. Moreover, it is charged, although denied, that the board is controlled by interests which are in conflict with those of at least some of the preferred stockholders. It is true that the creditors approve of the proposed settlements. This is quite weighty but I desire to evaluate their position in the light of all the facts.

Since the settlement is so relatively insignificant to the stockholders as contrasted with the benefits obtained by the accountants and the former officers and directors, and since this corporation is hopelessly insolvent it would seem that a sufficient doubt is thrown on the propriety of the proposals to warrant a final hearing. In the present case where plaintiff seeks, as he does here, the appointment of a receiver, the court must give some weight to the importance of maintaining the status quo until the actions of the corporation can be evaluated upon final hearing. The question which cannot fairly be resolved on the present record is this: Are the settlements so unreasonable that their approval amounts to the making of a gift of corporate assets? This is not to say however that such settlements may not, after final hearing, be demonstrated to be justifiable. Under the circumstances here presented, I believe the question of the "business judgment" defense should await the presentation of and evaluation of the facts after such final hearing. This is not the ordinary business judgment type of case.

In view of the uncertainty as to the value relationship between possible assets and liabilities of this insolvent corporation, and in view of the irretrievable and heavy stockholder losses which must follow if the settlements are effectuated, I conclude that a final hearing should be held to see whether the action of the board of directors and of a majority of the stockholders in approving the proposed settlements should be permanently restrained as exceeding the reasonable bounds of good business judgment.

The question of plaintiff's good faith will also be reserved for final hearing.

A preliminary injunction restraining the effectuation of the proposals pending final hearing will be issued.

Order on notice.